EDMUND J. POWERS, Appellant, *v.* JOHN SHEPARD, Respondent:

The control conferred upon congress, by the Constitution of the United States (art. 1, § 8), over the State militia, begins when they are mustered into the service of the United States. Arrangements by the States to procure or aid in calling them forth are not unauthorized, nor are regulations, fixing and limiting the amount of bounties, or rewards given to procure their services; therefore, section 4, of chapter 29, of the Laws of 1865, which prohibits the payment of any sums for the procurement of volunteers, save as provided for by that act, is not in conflict with the Constitution of the United States, and an agreement to pay a sum prohibited by that section is void.

The re-enactment of certain of the sections of one act, in a subsequent one providing for a different scheme, is not a repeal by implication of those sections in the first act, nor does a provision in the second act, suspending the operation of the similar sections in that act, have the effect to suspend the operation of those in the first act. The first seven sections, therefore, of said chapter 29, of the Laws of 1865, were not repealed or their operation suspended by chapter 41 of the Laws of that year.

Where several statutes *in pari materia* are passed by the same legislature, they are to be taken and construed together.

(Argued January 8, 1872; decided May term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, entered upon order setting aside a verdict in favor of plaintiff, and directing judgment in favor of defendant.

In March, 1865, the defendant was supervisor of the town of Sparta, in the county of Livingston, and, as such, for the purpose of filling the quota of that town, under the call for men for the army and navy of the United States, issued by the president on December 19, 1864, or the next call thereafter, he entered into an agreement in writing with the plaintiff, wherein he, the defendant, authorized the plaintiff to

recruit and furnish for him, the defendant, and for his said town, seventeen three-years naval recruits, on the credit of the same duly made, for each of which, he, the defendant, agreed to pay the plaintiff the sum of eight hundred dollars.

On March 21, 1865, the defendant made a second agreement, which was indorsed upon the first, by which he agreed to pay the plaintiff for furnishing the seventeen recruits provided for in the first agreement, the additional sum of eight hundred and fifty dollars, besides the amount mentioned in the first agreement.

The plaintiff furnished the requisite number of men, between the 21st and 25th of March, and the defendant paid to him the sum agreed upon in the first agreement.

This action is brought to recover the additional sum of eight hundred and fifty dollars.

On this trial the defendant moved to dismiss the complaint, on the grounds that the plaintiff had shown no cause of action, that the contract upon which the action was brought was void and in violation of the laws of this State, and particularly of chapter twenty-nine of the Laws of 1865, and of the fourth section of that act.

This motion was denied and the defendant's counsel excepted.

The court thereupon ordered a verdict for the plaintiff, subject to the opinion of the court at General Term.

The case and exceptions were argued at General Term, and judgment was ordered for the defendant with costs, which judgment was accordingly entered.

*Ira D. Warren* for the appellant.    Chapter 29 of the Laws of 1865 is in contravention of section 8 of article 1 of the Constitution of the United States. (*Houston* v. *Moore*, 5 Wheat., 23, 24; *Thompson* v. *Van Ingen*, 9 J., 564; *Powers* v. *Shepard*, 1 Abb. N. S., 129.) Where two acts are repugnant and contradictory, the last act is an implied repeal of the first. (*C. M. Co.* v. *Vanderpoel*, 4 Cow., 558; *Harrison* v. *Trustees of R.*, 10 Wend., 557 ; Sedgar on Stat. and

Const. Law, 124; *Dexter* v. *Limerick R. R. Co.*, 16 Barb., 15; *Davis* v. *Fairbanks*, 3 How. U. S. Rep., 636; *Bowen* v. *Lease*, 5 Hill, 225, and note *a;* *Commonwealth* v. *Kimball*, 21 Pick., 373; *Sterman* v. *State*, 21 Texas, 724; *Nixon* v. *Aifft*, 16 La. An., 379; *De Pauw* v. *New Albany*, 22 Ind., 204; *Mullen* v. *The People*, 31 Ill., 444; *Williams* v. *Potter*, 2 Barb., 316.) A subsequent statute reversing the sub-ject-matter of the first is a repeal of the first. (*Bartlett* v. *King*, 12 Mass., 537; *Nichols* v. *Squire*, 5 Pick., 168; *Henderson* v. *Sherburne*, 2 M. & W., 239; *Att'y-Gen'l* v. *Lockwood*, 9 M. & W. 391.) If the two acts can exist together the first seven sections of chapter 29 are suspended by section 11 of chapter 41. (Dwarris on Stat., 685, 700; *People* v. *Jackson*, 30 Cal., 427.) Chapter 56 of the Laws of 1865 is uncon-stitutional. (*Newell* v. *The People*, 3 Seld., 124.)

*S. F. Freeman* for the respondent. Chapter 29 of the Laws of 1865 is not unconstitutional. (*Cochrane* v. *Von Surlay*, 20 Wend., 381; *Newell* v. *The People*, 3 Seld., 109; *Wynehamer* v. *The People*, 3 Kern., 391; *The People* v. *Draper*, 3 N. Y., 549; *Leggett* v. *Hunter*, 19 id., 463; *Bank of Chenango* v. *Brown*, 26 id., 469.)

EARL, C. The agreement upon which the action was brought was personally binding upon the defendant, although he was, at the time he made it, supervisor of the town of Sparta. It is too clear for reasonable dispute, that although he was acting for the town, he intended to bind himself.

This agreement was made March 9, 1865, and it is con-ceded that it was prohibited by the language of section 4 of chapter 29 of the Laws of 1865. But it is claimed, on the part of the plaintiff, that that section is in conflict with the Constitution of the United States, and hence that it is void. The claim is that subdivisions 12, 13, 14, 15 and 17 of sec-tion 8, article 1 of that Constitution confer upon Congress the entire power to make the necessary laws for calling forth the

militia to suppress insurrection, and that Congress having exercised this power, the State has no right to intervene and legislate upon the same subject. But this act had nothing to do with the militia of the State nor with calling them forth. Its only object was to encourage volunteering and enlistments, so as to shield the citizens of the State from a draft, and at the same time aid the general government in putting down the rebellion.

The more important question, and the only one in reference to which there was any difference of opinion at General Term, is the one upon the claim of the plaintiff that section 4 was repealed or suspended by chapter 41 of the Laws of 1865.

Chapter 29 provided for a State bounty, not exceeding $600, for men enlisting for three years, and also authorized cities, towns and counties, upon certain conditions therein named, to pay the same bounty, to be refunded subsequently by the State. Sections 8, 9 and 10 of the act provided for raising the money to pay the bounties by a State debt to be paid in eighteen years. By sections 11, 12 and 13, provisions were made for submitting the act to the people at the next general election; and section 14 provided that sections 1, 2, 3, 4, 5, 6, 7, 11, 12, 13 and 14 of the act should take effect immediately; but that sections 8, 9 and 10 should not become a law until ratified by the people. While by section 3 of this act the comptroller was authorized to borrow money to carry out the provisions of the act and to repay the money so borrowed from the money to be raised under sections 8, 9 and 10 no direct appropriation of money was made and no provision was made for the payment of the money borrowed in case the people failed to ratify. This act was passed February 10.

On the 24th of February, chapter 41 was passed, and it contains the first seven sections of chapter 29. Section 8 appropriates $30,000,000 to pay the bounties authorized by the act. Section 9 provides for a tax to raise the money; and section 10 provides for borrowing the money until it can be

realized from the tax. Section 11 declares that the act should be a law from the time of its passage, but that it should not take effect until after the next general election.

Although the first seven sections of chapter 29 are contained in this chapter, I do not think that it was the intention of the legislature to repeal them or suspend their operation until chapter 41 should go into effect. It is hardly to be presumed that the legislature would have repealed an act passed but fourteen days before, and if they had intended to do so, they would probably have said so in some appropriate language, and would not have left it to mere inference.

The first act made no provision for paying the money borrowed, in case the people did not ratify sections 8, 9 and 10. And the object of the second act was to make provision, by taxation, to pay the money thus borrowed, in case the people failed to ratify, and, in that event, chapter 41 made complete provision for the whole case. But in case the people did ratify, then chapter 41 was not to take effect until after the adjournment of the legislature, so that it could be repealed, and the whole matter left, in that event, to chapter 29, which made full provision for it. Hence, there was no inconsistency in the two acts.

That there was no intention to repeal chapter 29, is made still more clear by chapter 56, of the Laws of 1865. As above stated, chapter 29 made no provisions for raising the money to pay the bounties, in case the act was not ratified by the people. Chapter 41 did not, in any event, take effect until after the canvass of the votes given at the next annual election. Hence, in order to make adequate provision for raising the money without delay, the act, chapter 56, was passed, which expressly recognized chapter 29 as in force, and was passed to supplement it. These three statutes are *in pari materia*, and must be construed together, and when thus construed in the light of the circumstances surrounding their enactment, and the objects intended to be reached, no doubt is left on my mind that section 4, of chapter 29, was in force when this contract was made.

This conclusion is fortified by a still further reason : section 4, of chapter 29, was enacted and took effect February 10. Fourteen days afterward, chapter 41 was enacted, with a provision that no part of it should take effect until after the canvass of the votes at the next election. How, then, could the latter act, before it took effect, by implication or otherwise, repeal or suspend any part of chapter 29 ?

The judgment should, therefore, be affirmed with costs.

All concur ; LEONARD, C., not sitting.

Judgment affirmed.